IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| JOEL NOONKESTER,<br>    PLAINTIFF, | |
| v. | CASE NO.: 4:21-cv-700 |
| CAPITAL MANAGEMENT HOLDINGS, LLC<br>d/b/a ELITE DEBT BROKERS a/k/a ALLIANCE<br>and/or UNIVERSAL,<br>and<br>NATIONWIDE CAPITAL SERVICES, LLC<br>d/b/a STRUCTURED SETTLEMENT,<br>and<br>WESTERN SURETY COMPANY,<br>    DEFENDANTS. | |

# COMPLAINT AND JURY DEMAND

## JURISDICTION AND VENUE

1. Jurisdiction of this Court arises under 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d).

2. Supplemental Jurisdiction exists pursuant to 28 U.S.C. § 1367.

3. This action arises out of the violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"), and the Texas Finance Code by Capital Management Holdings, LLC ("CMH") and Nationwide Capital Services, LLC ("Nationwide").

4. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b), in that defendants transact business in this judicial district and a substantial portion of the acts giving rise to this action occurred in this District.

5. Plaintiff resides in this District.

## PARTIES

6. Plaintiff, Joel Noonkester ("Plaintiff"), is an adult individual residing in Hood County, Texas, and is a "consumer" as the term is defined by 15 U.S.C. § 1692a(3) and Tex. Fin. Code § 392.001(1).

7. Nationwide is a Nevada company.

8. As will be described below, Nationwide purchased an Account allegedly owed by Plaintiff from a third-party for the purpose of collecting on that Account to make a profit.

9. The principal purpose of Nationwide is the collection of debts by using the mails and telephone and other means.

10. Nationwide regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another that arose out of transactions in which the money, property, or services which are the subject of the transactions are primarily for personal, family or household purposes.

11. Nationwide is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) and as that term is defined by Tex. Fin. Code § 392.001(6) and is a "third-party debt collector" as that term is defined by Tx. Fin. Code § 392.001(7).

12. CMH is a New York company operating from Staten Island, New York, according to its website (www.cmhdebt.com) (last visited December 10, 2020).

13. CMH is not registered to do business in Texas, but can be served in New York via its registered agent, Corporation Service Company, at 80 State Street, Albany, NY 12207.

14. CMH advertises on its website (www.cmhdebt.com) (last visited December 10, 2020), that it "specializes in buying and selling debt."

15. As will be described below, CMH received placement of a past due account from Nationwide and attempted to collect that account from Plaintiff.

16. As will be described below, CMH directed communications to Plaintiff for the purpose of collecting the Account in question from her.

17. As can be seen on the website for the Better Business Bureau, other consumers have complained about the treatment they received during direct communications from CMH as well (https://www.bbb.org/us/ny/staten-island/profile/collections-agencies/capital-management-holdings-0121-167012/complaints) (last visited December 10, 2020).

18. The principal purpose of CMH is the collection of debts using the mails and telephone and other means.

19. CMH regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another that arose out of transactions in which the money, property, or services which are the subject of the transactions are primarily for personal, family or household purposes.

20. CMH is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) and as that term is defined by Tex. Fin. Code § 392.001(6) and is a "third-party debt collector" as that term is defined by Tx. Fin. Code § 392.001(7).

21. Defendant Western Surety Company ("Western") is the surety company for the bond Nationwide has on file with the Texas Secretary of State, bond number 26296957. Western is liable for acts committed by Nationwide pursuant to, and to the extent provided by, Chapter 392 of the Texas Finance Code and a bond secured pursuant thereto, as well as any other applicable law.

22. Western is a foreign entity that can be served in the state of Texas via its registered agent, C T Corporation System, at 1999 Bryan St., Suite 900, Dallas, Texas, 75201.

## FACTUAL ALLEGATIONS

23. At some time in the past, Plaintiff allegedly incurred a financial obligation that was primarily for personal, family or household purposes, namely an amount due and owing on a personal account (hereinafter the "Account"). Specifically, plaintiff believes the account was payday loan obtained from Lend Nation to pay for various personal effects, but was not used for any business or commercial purposes.

24. The Account constitutes a "debt" as that term is defined by 15 U.S.C. § 1692a(5) and is a "consumer debt" as that term is defined by Tex. Fin. Code § 392.001(2).

25. The Account allegedly went into default with the original creditor, Lend Nation.

26. After the Account allegedly went into default, the Account was purchased by Nationwide for collection.

27. In the regular course of its business, Nationwide uses the business name of Structured Settlement and may be known by that name to its vendors, creditors and customers.

28. Nationwide placed the Account with, or otherwise transferred the Account to, CMH.

29. CMH then contacted Plaintiff directly to collect on the Account from Plaintiff.

30. On information and belief, Nationwide maintained a financial interest in the Account at all times relevant hereto, such that Nationwide would make more money if CMH collected on the Account than it would make if CMH did not collect on the Account.

31. Plaintiff admits the existence of the Account, but disputes the amount CMH and Nationwide attempted to collect from him.

32. Plaintiff requests that defendants cease all further communications regarding the Account.

33. When attempting to collect the Account, CMH used the unregistered fictitious business name of "Universal" and/or "Alliance."

34. In the regular course of its business, CMH uses the business name of Elite Debt Brokers and may be known by that name to its vendors, creditors and customers.

35. During the one year prior to the filing of the original complaint in this matter, more specifically in approximately March 2021, CMH called Plaintiff's nephew without Plaintiff's consent and told Plaintiff's nephew that Plaintiff was going to be served papers if Plaintiff didn't repay the debt before the process server arrived.

36. CMH also called Plaintiff's wife and told her the same thing it had told Plaintiff's nephew.

37. CMH also left a voicemail Plaintiff in which CMH stated:

    Joel this is Nick Miller contacting you in regards to your case that is being filed through Hood County. By law [inaudible] to make you aware that once case number 897653 is filed through the county, it becomes a matter of public record and there is an order for your location. Since I was unable to reach you by phone, I have been instructed to contact your employer and speak with your supervisor because it looks like that's going to be your likely place of location. You have the legal right to contact the proceeding office that is processing your case. However, you would have to speak with him before your case is filed. Once your case is discharged from their office, your legal rights will be forfeited. The number provided is (855) 445-7785. Joel Noonkester, you are being legally notified by telephone and you will be located unless I'm instructed otherwise.

38. After Plaintiff received the above-described messages, Plaintiff called back to the number provided and spoke with CMH, who told Plaintiff that he was going to be sued for more than a thousand dollars if he did not repay the Account immediately.

39. Fearful of being sued, Plaintiff paid CMH $212.00.

40. After Plaintiff's payment processed, Plaintiff received a letter from CMH declaring that his case had been "dismissed."

41. The communication with Plaintiff's nephew described above amounted to an improper disclosure to a third party of the existence of the Account.

42. The communications with Plaintiff's nephew and wife described above were intended to be relayed to Plaintiff.

43. The communications described above were false, deceptive and misleading. Specifically, there was no "case that is being filed through Hood County" and there was no "order for [plaintiff's] location" and there was no "proceeding office that is processing" a case against Plaintiff, nor would any of Plaintiff's legal rights be "forfeited" if he failed to respond to the threatening phone calls.

44. By making all of the statements detailed above, CMH indirectly or directly told Plaintiff that a lawsuit had been filed or immanently would be filed against her.

45. The communications described above would cause the least sophisticated consumer to believe that a lawsuit had been filed or immanently would be filed against her, that an attorney was working on recovery of the Account for CMH, that a process server was about to serve her at work or at home, and that the consumer would soon lose the right to defend against the claim.

46. As of the filing of the Complaint in this matter no lawsuit has been filed against Plaintiff on the Account.

47. At the time CMH made the statements detailed above, neither CMH nor Nationwide had any intent to sue Plaintiff on the Account.

48. Further, the threat to contact Plaintiff's employer was a threat to inform and involve Plaintiff's employer for the purpose of embarrassing and intimidating Plaintiff into repaying the Account.

49. The communications with Plaintiff's nephew amounted to unauthorized disclosure of the debt to a third party.

50. In every communication with Plaintiff, CMH failed to inform Plaintiff that CMH was a debt collector, that CMH was attempting to collect a debt and/or that any information obtained would be used for the purpose of debt collection.

51. CMH never informed Plaintiff of her right to dispute the Account or to request validation of the Account.

52. CMH never provided Plaintiff with meaningful disclosure of its identity when it placed telephone calls to Plaintiff.

53. CMH's collection practices caused Plaintiff to suffer fear, stress, mental anguish, depression and/or distraction from normal life.

54. CMH's sole purpose for making the statements was to intimidate Plaintiff into making a payment on the Account.

55. CMH 's purpose for calling Plaintiff was to attempt to collect the Account.

56. The telephone calls described above each constituted a "communication" as defined by FDCPA § 1692a(2).

57. On information and belief, Nationwide directly or indirectly, exerted influence over CMH and caused CMH to act in the manner that they did with respect to Plaintiff.

58. On information and belief, Nationwide knew that CMH repeatedly or continuously engaged in collection practices as described above.

59. During all times pertinent hereto, Nationwide (a) ratified the unlawful debt collection practices and procedures used by CMH and its employees and agents in connection with their common efforts to collect consumer debts, and/or (b) had knowledge of, approved, participated in, ratified and benefitted financially from the unlawful debt collection practices used by CMH and its employees and agents in attempts to collect an alleged debt from Plaintiff as alleged in this complaint.

60. The only reason that CMH and/or its representative(s), employee(s) and/or agent(s) made telephone call(s) to Plaintiff was to attempt to collect the Account.

61. The only reason that CMH and/or its representative(s), employee(s) and/or agent(s) had telephone conversation(s) with Plaintiff was to attempt to collect the Account.

62. CMH conducted all of its collection attempts without a surety bond on file with the Texas Secretary of State.

63. All of the conduct by CMH and/or Nationwide and/or their employees and/or agents alleged in the preceding paragraphs was done knowingly and willfully.

64. On information and belief, Nationwide had actual knowledge that CMH repeatedly or continuously engaged in acts or practices prohibited by Chapter 392 of the Texas Finance Code, including, but not limited to, collecting in Texas without a surety bond on file with the Texas Secretary of State.

65. As a consequence of Defendants' collection activities and communication(s), Plaintiff seeks damages and attorneys fees and costs pursuant to 15 U.S.C. § 1692k and damages, an injunction, attorneys fees and costs pursuant to Tex. Fin. Code § 392.403.

## RESPONDEAT SUPERIOR

66. The representative(s) and/or collector(s) at CMH were employee(s) and/or agents of CMH at all times mentioned herein.

67. The representative(s) and/or collector(s) at CMH were acting within the course of their employment at all times mentioned herein.

68. The representative(s) and/or collector(s) at CMH were under the direct supervision and control of CMH at all times mentioned herein.

69. The actions of the representative(s) and/or collector(s) at CMH are imputed to their employer, CMH.

70. Nationwide was aware of and profited from the collection methods and practices used by CMH's employees.

71. The actions and inactions of CMH, and its employee(s) and/or agents, are imputed to Nationwide.

## COUNT I:  VIOLATIONS OF THE FDCPA 15 U.S.C. §1692, et seq.
## BY CAPITAL MANAGEMENT HOLDINGS, LLC

72. The previous paragraphs are incorporated into this Count as if set forth in full.

73. The act(s) and omission(s) of CMH and its representative(s), employee(s) and/or agent(s) violated 15 U.S.C. § 1692c(b) and 15 U.S.C. § 1692d generally and § 1692d(2)&(6) specifically and §1692e generally and specifically §1692e(2)&(3)&(4)&(5)&(7)&(8)& (10)&(11)&(13)&(14) and §1692g(a).

74. Pursuant to 15 U.S.C. §1692k Plaintiff seeks damages, reasonable attorney's fees and costs from CMH.

## COUNT II:  VIOLATIONS OF THE TEXAS FINANCE CODE
## BY CAPITAL MANAGEMENT HOLDINGS, LLC

75. The previous paragraphs are incorporated into this Count as if set forth in full.

76. The act(s) and omission(s) of CMH and its representative(s), employee(s) and/or agent(s) violated Tex. Fin. Code §392.101 and §392.301(a)(7)&(8) and §392.302(1) and §392.304(a)(1)&(4)&(5)&(8)&(14)&(16)&(17)&(19).

77. Pursuant to Tex. Fin. Code §392.403(a)(1), Plaintiff seeks an injunction against CMH enjoining it from future violations of the Texas Finance Code as described herein.

78. Pursuant to Tex. Fin. Code §392.403(a)(2) Plaintiff seeks damages from CMH.

79. Pursuant to Tex. Fin. Code §392.403(b) Plaintiff seeks attorney's fees and costs from CMH.

80. Pursuant to Tex. Fin. Code §392.403(e), Plaintiff seeks statutory damages of not less than $100 for each violation of the chapter in which Tex. Fin. Code §392.403(e) is codified.

## COUNT III:  INVASION OF PRIVACY (INTRUSION ON SECLUSION)
## BY CAPITAL MANAGEMENT HOLDINGS, LLC
## D/B/A ELITE DEBT BROKERS

81. In the alternative, without waiving any of the other causes of action herein, without waiving any procedural, contractual, statutory, or common-law right, and incorporating all other allegations herein to the extent they are not inconsistent with the cause of action pled here, CMH is liable to Plaintiff for invading Plaintiff's privacy (intrusion on seclusion).  CMH intentionally caused the intrusion upon Plaintiff's solitude, seclusion, or private affairs, and such intrusion would be highly offensive to a reasonable person.

82. Plaintiff suffered actual damages from CMH as a result of the intrusion on Plaintiff's privacy.

## COUNT IV:  VIOLATIONS OF THE FDCPA 15 U.S.C. § 1692, et seq. BY NATIONWIDE CAPITAL SERVICES, LLC

83. The previous paragraphs are incorporated into this Count as if set forth in full.

84. By having a financial interest in CMH's conduct toward Plaintiff and/or by ratifying and/or approving the conduct of CMH, Nationwide is liable for the act(s) and omission(s) of CMH and their representative(s), employee(s) and/or agent(s) for violations 15 U.S.C. § 1692c(b) and 15 U.S.C. § 1692d generally and § 1692d(2)&(6) specifically and §1692e generally and specifically §1692e(2)&(3)&(4)&(5)&(7)&(8)& (10)&(11)&(13)&(14) and §1692g(a).

85. Pursuant to 15 U.S.C. §1692k Plaintiff seeks damages, reasonable attorney's fees and costs from Nationwide.

## COUNT V:  VIOLATIONS OF THE TEXAS FINANCE CODE BY NATIONWIDE CAPITAL SERVICES, LLC

86. The previous paragraphs are incorporated into this Count as if set forth in full.

87. By having a financial interest in CMH's conduct toward Plaintiff, Nationwide is liable for the act(s) and omission(s) of CMH and their representative(s), employee(s) and/or agent(s) for violations of Tex. Fin. Code §392.101 and §392.301(a)(7)&(8) and §392.302(1) and §392.304(a)(1)&(4)&(5)&(8)&(14)&(16)&(17)&(19).

88. For its own conduct, Nationwide is additionally liable to Plaintiff under Tex. Fin. Code §392.306.

89. Pursuant to Tex. Fin. Code §392.403(a)(1), Plaintiff seeks an injunction against Nationwide enjoining it from future violations of the Texas Finance Code as described herein.

90. Pursuant to Tex. Fin. Code §392.403(a)(2) Plaintiff seeks damages from Nationwide.

91. Pursuant to Tex. Fin. Code §392.403(b) Plaintiff seeks attorney's fees and costs from Nationwide.

92. Pursuant to Tex. Fin. Code §392.403(e), Plaintiff seeks statutory damages of not less than $100 for each violation of the chapter in which Tex. Fin. Code §392.403(e) is codified.

### COUNT VI: INVASION OF PRIVACY (INTRUSION ON SECLUSION) BY NATIONWIDE CAPITAL SERVICES, LLC

93. In the alternative, without waiving any of the other causes of action herein, without waiving any procedural, contractual, statutory, or common-law right, and incorporating all other allegations herein to the extent they are not inconsistent with the cause of action pled here, Nationwide is liable to Plaintiff for colluding with CMH to invade Plaintiff's privacy (intrusion on seclusion). Nationwide intentionally caused the intrusion upon Plaintiff's solitude, seclusion, or private affairs, and such intrusion would be highly offensive to a reasonable person.

94. Plaintiff suffered actual damages from Nationwide as a result of the intrusion on Plaintiff's privacy.

### COUNT VII: IMPUTED LIABILITY OF WESTERN SURETY COMPANY FOR LIABILITY OF NATIONWIDE CAPITAL SERVICES, LLC

95. The previous paragraphs are incorporated into this Count as if set forth in full.

96. The act(s) and omission(s) of Nationwide and its representative(s), employee(s) and/or agent(s) in violation of Tex. Fin. Code §392.101 and §392.301(a)(7)&(8) and §392.302(1) and §392.304(a)(1)&(4)&(5)&(8)&(14)&(16)&(17)&(19) and §392.306 are imputed to Western pursuant to Tex. Fin. Code § 392.102.

97. Pursuant to Tex. Fin. Code § 392.403, Plaintiff seeks damages, reasonable attorney's fees and costs from Western.

## EXEMPLARY DAMAGES

98. Exemplary damages should be awarded against CMH and/or Nationwide because the harm with respect to which Plaintiff seeks recovery of exemplary damages resulted from malice (which means that there was a specific intent by CMH and/or Nationwide to cause substantial injury or harm to Plaintiff) and/or gross negligence (which means that CMH's and/or Nationwide's actions and/or omissions (i) when viewed objectively from CMH's and/or Nationwide's standpoint at the time of the acts and/or omissions involved an extreme degree of risk, considering the probability and magnitude of potential harm to others and (ii) were such that CMH and/or Nationwide had an actual, subjective awareness of the risk involved but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others).

## JURY TRIAL DEMAND

99. Plaintiff is entitled to and hereby demands a trial by jury.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff requests that the Court grant the following:

100. Judgment in favor of Plaintiff and against Capital Management Holdings, LLC d/b/a Elite Debt Brokers as follows:

    a. Actual damages pursuant to 15 U.S.C. §1692k(a)(1);

    b. Statutory damages in the amount of $1,000.00 pursuant to 15 U.S.C. §1692k(a)(2);

    c. Reasonable attorneys fees and costs pursuant to 15 U.S.C. § 1692k(a)(3);

    d. Actual damages pursuant to Tex. Fin. Code §392.403(a)(2);

    e. Statutory damages of not less than $100 for each violation of the chapter in which Texas Fin. Code §392.403(e) is codified;

    f. An injunction permanently enjoining CMH following trial of this cause from committing acts in violation of the Texas Finance Code as cited herein pursuant to Tex. Fin. Code §392.403(a)(1);

    g. Reasonable attorneys fees and costs pursuant to Tex. Fin. Code §392.403(b); and

    h. Exemplary damages pursuant to the common law of Texas, see, e.g. *Waterfield Mortgage Co., Inc. v. Rodriguez*, 929 S.W.2d 641, 645 (Tex. App. 1996); and

    i. Such other and further relief as the Court deems just and proper.

101. Judgment in favor of Plaintiff and against Nationwide Capital Services, LLC d/b/a Structured Settlement as follows:

    a. Actual damages pursuant to 15 U.S.C. §1692k(a)(1);

    b. Statutory damages in the amount of $1,000.00 pursuant to 15 U.S.C. §1692k(a)(2);

    c. Reasonable attorneys fees and costs pursuant to 15 U.S.C. § 1692k(a)(3);

    d. Actual damages pursuant to Tex. Fin. Code §392.403(a)(2);

    e. Statutory damages of not less than $100 for each violation of the chapter in which Texas Fin. Code §392.403(e) is codified;

    f. An injunction permanently enjoining Nationwide following trial of this cause from committing acts in violation of the Texas Finance Code as cited herein pursuant to Tex. Fin. Code §392.403(a)(1);

    g. Reasonable attorneys fees and costs pursuant to Tex. Fin. Code §392.403(b); and

    h.  Exemplary damages pursuant to the common law of Texas, see, e.g. *Waterfield Mortgage Co., Inc. v. Rodriguez*, 929 S.W.2d 641, 645 (Tex. App. 1996); and

    i.  Such other and further relief as the Court deems just and proper.

102.  Judgment in favor of Plaintiff and against Western Surety Company as follows:

    a.  Statutory damages in the amount of not less than $100 for each violation of Tex. Fin. Code chapter 392, pursuant to Tex. Fin. Code § 392.403;

    b.  Damages and reasonable attorney's fees and costs pursuant to Tex. Fin. Code § 392.403;

    c.  Such other and further relief as the Court deems just and proper.

                                       Respectfully submitted,

                                       /s/ Jeffrey D. Wood
                                       Jeffrey D. Wood, Esq.
                                       ArkBN: 2006164
                                       THE WOOD FIRM, PLLC
                                       209 Hubbard Drive
                                       Heath, TX  75032
                                       TEL:  682-651-7599
                                       FAX:  888-598-9022
                                       EMAIL:  jeff@jeffwoodlaw.com
                                       Attorney for Plaintiff